IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| EDWARD W. JEFFERSON, III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | 07-0680-CV-W-REL-SSA |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION**
**TO REVERSE AND REMAND PURSUANT TO SENTENCE FOUR**

Before the court is defendant's motion to reverse the decision of the ALJ and remand for further consideration. Specifically, defendant states that upon remand, the ALJ should reevaluate plaintiff's residual functional capacity to account for his moderate limitation in social functioning and to consider the Veteran's Administration's ("VA") finding of total disability.

Plaintiff filed a response arguing that a finding of disability can be made with the evidence at hand. Plaintiff states that two treating psychiatrists and the consultative examiner of record have all found that plaintiff's mental impairments would prevent the performance of full-time, competitive employment on an ongoing basis. Plaintiff argues that the ALJ erred in giving no weight to the opinion of both treating psychiatrists and in failing to weigh the opinion of the consultative examiner. "Had the ALJ properly evaluated each

medical opinion of record, a finding of disability would have
resulted. Because the record firmly establishes disability and
further hearings would merely further delay the receipt of
benefits, Mr. Jefferson asks this Court to reverse the final
decision of the Commissioner."

### 1. *Psychiatrist's opinions*

#### a. *Daniel Spurlock, D.O.*

The ALJ gave "no weight" to Dr. Spurlock's Mental Impairment
Questionnaire completed on March 30, 2005, in which Dr. Spurlock
found that plaintiff had a poor ability to perform the following:

- The ability to remember locations and work-like procedures

- The ability to understand and remember very short and simple
  instructions

- The ability to carry out very short and simple instructions

- The ability to maintain attention and concentration for
  extended periods

- The ability to work in coordination with or proximity to
  others without being distracted by them

- The ability to make simple work-related decisions

- The ability to complete a normal workday and workweek
  without interruptions from psychologically based symptoms
  and to perform at a consistent pace without an unreasonable
  number and length of rest periods

- The ability to get along with coworkers or peers without
  distracting them or exhibiting behavioral extremes

- The ability to respond appropriately to changes in the work
  setting

2

In support of his findings, Dr. Spurlock wrote the following:

> The patient has had a chronic course of bipolar mood disorder. It appears that most of his episodes have been depressive. The increased irritability makes it difficult for patient to work well with others. He also has impaired concentration and memory which would make it difficult to successfully complete tasks. During patient's manic episodes concentration/focus could be even worse as he would be easily distracted by external stimuli and even internal stimuli such as auditory hallucinations.

(Tr. at 269).

Dr. Spurlock also indicated that plaintiff is "incapable of even 'low stress' jobs" and that he would be likely to miss work more than three times per month due to impairments or treatment (Tr. at 269).

I have found medical records of four visits to Dr. Spurlock, three of them occurring prior to the completion of the form in dispute. Plaintiff saw Dr. Spurlock on January 13, 2005 (Tr. at 355-357). Dr. Spurlock spent 30 minutes with plaintiff during that visit. The records state that plaintiff had been drug free per his report for six to eight months and felt that his medications had been helpful. Plaintiff had been out of Seroquel for two months and felt more agitated, but was "otherwise doing well." His energy was good. He reported he was involved with various projects but was unable to get any of them accomplished. Dr. Spurlock performed a mental status exam and found that plaintiff was well groomed, pleasant, cooperated, had good eye

3

contact, had normal psychomotor activity, was alert and oriented times four, had normal speech, had full affect, his thought processes were linear and goal directed, his insight was good, and his judgment was good.  Plaintiff denied suicidal ideation.

There is nothing in this record suggesting that plaintiff has any difficulty with memory.  The record reflects that plaintiff was taking 14 different medications, and it does not appear that anyone came to the appointment with plaintiff leaving the inference that Dr. Spurlock believed that plaintiff was capable of following the medical directions and taking his own medication appropriately.

Plaintiff returned to see Dr. Spurlock on February 16, 2005 (Tr. at 339-341).  The visit was 30 minutes long.  Plaintiff complained of poor focus and concentration.  He was using 16 different medications.  Dr. Spurlock completed a mental status exam finding that plaintiff was well groomed, pleasant, cooperative, had good eye contact, had normal psychomotor activity, was alert and oriented times four, had normal speech, his thought processes were linear and goal directed, his insight was good, and his judgment was good.  He denied suicidal ideation.  Dr. Spurlock told plaintiff to continue on his current medications and he also added Remeron, 15 mg at bedtime.  He told plaintiff to return in one month.  Again there is nothing in this

4

record to suggest that plaintiff was having difficulty with his memory, with following instructions, or making decisions.

Plaintiff saw Dr. Spurlock on March 23, 2005 (Tr. at 333-335). Plaintiff reported that he was "mildly agitated" because Dr. Spurlock had not completed plaintiff's disability forms. Dr. Spurlock told plaintiff he wanted plaintiff present when he completed the forms. Plaintiff "currently feels that he is doing pretty well although continues to acknowledge AH [auditory hallucinations] occasionally. Mood is 'ok'. No HI/SI [homicidal ideations/suicidal ideations]. Feels medications are currently adequate." Dr. Spurlock completed a mental status exam and found that plaintiff was well groomed, pleasant, cooperative, had good eye contact, had normal psychomotor activity, was alert and oriented times four, had normal speech, his thought process was linear and goal directed, his insight was good, and his judgment was good.

It seems that the opinion at issue here is not really supported by Dr. Spurlock's records. Dr. Spurlock consistently found that plaintiff had good insight and good judgment, yet on the form he indicated that plaintiff's ability to make simple decisions was poor. Dr. Spurlock never indicated that plaintiff complained of memory problems, and Dr. Spurlock never found any memory problems, yet he found that plaintiff's ability to remember even simple instructions was poor. Even on a subsequent

5

visit, on May 4, 2005 (Tr. at 329-331), Dr. Spurlock's records were consistent with plaintiff's previous visits and inconsistent with the findings on the March 30 opinion at issue. On that May 4, 2005, visit, plaintiff said he was doing "ok". His mental status exam resulted in the same findings as on his previous visits with Dr. Spurlock.

The findings of Dr. Spurlock in his March 30, 2005, report also appear to conflict with other evidence in the record. On July 13, 2005, Dr. Krause found that plaintiff's recent and remote memory were intact. She found good judgment and insight (Tr. at 315-317). During an August 17, 2005, visit, plaintiff was found to have good judgment and insight, and his recent and remote memory were intact (Tr. at 310-312). On August 8, 2005, plaintiff's recent, remote, and immediate memory were normal (Tr. at 306). He had no persistent hallucinations, no inappropriate behavior, no obsessive/ritualistic behaviors, no panic attacks, and no episodes of violence (Tr. at 305). He was able to interpret proverbs appropriately and to maintain minimum personal hygiene (Tr. at 305). He was found to be incapable of managing his financial affairs because he was using his veterans benefits to pay fines for stealing and to buy cocaine (Tr. at 306). Dr. Moscovich, a psychiatrist, wrote, "It would be difficult to determine whether or not the mood disorder is caused by the substance abuse or a manifestation of the Bipolar Disorder. The

6

cocaine use could possibly be an attempt to self-medicate if the depression is part of the bipolar disorder and not a substance induced disorder." (Tr. at 307).

Yet that same record includes the following findings: plaintiff's decreased efficiency was moderate and frequent; his decreased productivity was moderate and frequent; his decreased reliability was moderate and frequent; his inability to perform work tasks was moderate and frequent; and his impaired work, family, and other relationships were moderate and frequent (Tr. at 307-308).

### b. *Shakila Tanjim, M.D.*

On February 1, 2006, Shakila Tanjim, M.D., completed a mental impairment questionnaire (Tr. at 272-275). She found that plaintiff had poor memory; sleep disturbance; personality change; mood disturbance; emotional lability; delusions or hallucinations; substance dependence; anhedonia or pervasive loss of interests; psychomotor agitation or retardation; feelings of guilt and worthlessness; difficulty thinking or concentrating; suicidal ideation or attempts in the past; perceptual disturbances; social withdrawal or isolation; blunt, flat, or inappropriate affect; decreased energy; intrusive recollections of a traumatic experience; hostility and irritability; and pathological dependence or passivity (Tr. at 272). She found that plaintiff's degree of limitation was extreme in his

7

restriction of activities of daily living; was extreme in his difficulties in maintaining social functioning; was constant in his deficiencies of concentration, persistence, or pace; and had continual episodes of deterioration or decompensation (Tr. at 273). She listed his prognosis as guarded and found that he would likely miss more than four days of work per month due to his impairment or treatment (Tr. at 274). She found that plaintiff would have difficulty working at a regular job on a sustained basis due to loss of concentration, drowsiness, worthlessness, and social isolation (Tr. at 275). Dr. Tanjim found that plaintiff could manage his benefits appropriately (Tr. at 275).

Plaintiff, in his motion for summary judgment, lists only the above mental impairment questionnaire in his discussion of Dr. Tanjim. I have been able to find no specific medical records with Dr. Tanjim's signature. Dr. Tanjim works for the Veteran's Administration and many of those records do not bear signatures. However, as was the case with Dr. Spurlock, many of these findings are inconsistent with the other evidence in the record. In addition to the records discussed above in relation to Dr. Spurlock's findings, I point out the following:

On September 26, 2005, plaintiff reported that he had used cocaine about six months out of the previous year (Tr. at 302). This is inconsistent with Dr. Spurlock's records dated in early

8

2005 which indicate that plaintiff's cocaine use was in total remission.

On October 5, 2005, plaintiff admitted having used cocaine during the previous two weeks (Tr. at 297, 299).

On October 27, 2005, plaintiff saw Deborah Krause, D.O., and denied racing thought, suicidal ideation, auditory hallucinations, visual hallucinations (Tr. at 294-295). Plaintiff reported increased depression and low mood, increased stress and irritability due to his inability to pay his bills and buy necessities (Tr. at 294). Dr. Krause performed a mental status exam and found that plaintiff was pleasant and cooperative, had good hygiene and grooming, normal psychomotor activity, was alert and oriented, his recent and remote memory were intact, his speech was normal, his thought process was linear and goal directed, his judgment was good, and his insight was good. He was referred to the social work staff to obtain assistance with paying for gas (Tr. at 295).

And I also point out that Dr. Tanjim's finding that plaintiff is capable of managing his own funds is directly contradictory to the August 2005 finding by Dr. Moscovich that plaintiff was NOT capable of managing his own funds as he had been using his Veteran's benefits to pay criminal fines and to buy cocaine.

9

Because it is not clear from the record that plaintiff is or is not disabled, remand for further consideration on this basis is appropriate.

## *2. Failure to consider VA determination*

In this case, the ALJ did not mention in his opinion the VA's determination that plaintiff is permanently and totally disabled.

The ALJ should consider the VA's finding of disability, Morrison v. Apfel, 146 F.3d 625, 628 (8th Cir. 1998), but the ALJ is not bound by the disability rating of another agency when he or she is evaluating whether the claimant is disabled for purposes of social security benefits. Pelkey v. Barnhart, 433 F.3d 575, 579 (8th Cir. 2006), citing 20 C.F.R. § 404.1504; Fisher v. Shalala, 41 F.3d 1261, 1262 (8th Cir. 1994) (per curiam). Where an ALJ does not mention a VA's finding of partial disability, there is no error if the ALJ fully considered the evidence underlying the VA's final conclusion regarding disability. Pelkey v. Barnhart, 433 F.3d at 579. However, in this case the VA found plaintiff 100% disabled.

> We hold that the ALJ erred in two respects. First, in his decision, the ALJ should have addressed the determination by the VA that Morrison is permanently and totally disabled. It is true that "the ALJ does not have to discuss every piece of evidence presented. . . ." Miller v. Shalala, 8 F.3d 611, 613 (8th Cir. 1993). It is also true that a disability determination by the VA is not binding on an ALJ considering a Social Security applicant's claim for disability benefits. See Jenkins v. Chater, 76 F.3d 231, 233 (8th Cir. 1996). We think, however, that the VA finding

10

was important enough to deserve explicit attention. We agree
with other courts that findings of disability by other
federal agencies, even though they are not binding on an
ALJ, are entitled to some weight and must be considered in
the ALJ's decision. See Wilkins v. Callahan, 127 F.3d 1260,
1262 (10th Cir. 1997); Baca v. Department of Health and
Human Services, 5 F.3d 476, 480 (10th Cir. 1993); Fowler v.
Califano, 596 F.2d 600, 603 (3d Cir. 1979).

Morrison v. Apfel, 146 F.3d 625, 628 (8th Cir. 1998).

Because the ALJ did not address the VA's finding that plaintiff is permanently and totally disabled, remand on this basis is also appropriate.

### *3.  Conclusion*

In Buckner v. Apfel, 213 F.3d 1006, 1001 (8th Cir. 2000), the court stated as follows:

> Ordinarily, when a claimant appeals from the Commissioner's
> denial of benefits and we find that such a denial was
> improper, we, out of "our abundant deference to the ALJ,"
> remand the case for further administrative proceedings. Cox
> v. Apfel, 160 F.3d 1203, 1210 (8th Cir. 1998). Consistent
> with this rule, we may enter an immediate finding of
> disability only if the record "overwhelmingly supports" such
> a finding. Thompson v. Sullivan, 957 F.2d 611, 614 (8th
> Cir.1992); see Fowler v. Bowen, 866 F.2d 249, 253 (8th
> Cir.1989); Talbott v. Bowen, 821 F.2d 511, 514 (8th
> Cir.1987).

In this case, the record does not "overwhelmingly support" a finding that plaintiff was disabled independent of his drug abuse.

Whether to grant the Commissioner's request to remand for further consideration is a matter of discretion with the district court. Ingram v. Barnhart, 303 F.3d 890, 893 (8th Cir. 2002). Because, as described above, the record does not overwhelmingly

11

support a finding that plaintiff was disabled during the time at issue in this case, it is

ORDERED that defendant's motion to remand is granted, the decision of the Commissioner is reversed pursuant to sentence four of 42 U.S.C. § 405(g), and this case is remanded for the reasons outlined in defendant's motion and summarized above.

*/s/ Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
April 28, 2008